925 So.2d 898 (2006)
Michelle SMITH, Appellant
v.
MAGNOLIA LADY, INC. d/b/a Lady Luck Rhythm & Blues Casino-Hotel, Appellee.
No. 2004-CA-02112-COA.
Court of Appeals of Mississippi.
March 28, 2006.
*900 Carlos Eugene Moore, Grenada, A.E. (Rusty) Harlow, attorneys for appellant.
Charles E. Webster, Clarksdale, attorney for appellee.
Before LEE, P.J., IRVING and ISHEE, JJ.
IRVING, J., for the Court.
¶ 1. Michelle Smith sued her former employer, Magnolia Lady, Inc. (Magnolia Lady), alleging malicious prosecution, wrongful discharge, false imprisonment, defamation, and injurious falsehood. After discovery, Magnolia Lady filed a motion for summary judgment, which the trial court granted. The motion covered all of Smith's claims except injurious falsehood. The trial court denied a separate motion for summary judgment on the injurious falsehood claim, but later dismissed that *901 claim as well. Smith appeals, asserting that the trial court erred in granting summary judgment and in dismissing the injurious falsehood claim.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Smith had been working for Magnolia Lady as a manager at the Lady Luck Casino in Coahoma County for around three months when her employment was terminated. On December 20, 1997, Smith was training another employee to become a manager, when the trainee set down an unmarked stack of one hundred dollar bills, worth ten thousand dollars. Video surveillance footage clearly showed Smith picking up the bills and placing them underneath plastic bags on a cart.
¶ 4. The cart with the money eventually made it to another part of the casino, where it was discovered. Smith and her co-workers were called, and bookkeeping entries were made to reflect the discovery of the misplaced money. The cart was visible on video surveillance from the time that Smith placed the money on the cart, to the time that the stack of bills was discovered. As explanation, Smith claims that she forgot about the ten thousand dollars after placing it on the cart. During her deposition, Smith was unable to provide any explanation as to why she placed the money on the cart.
¶ 5. Magnolia Lady told Smith to come in for her next scheduled work time as usual. Magnolia Lady also contacted the Coahoma County Sheriff's Department, so that law enforcement could conduct its own investigation into the incident. When Smith arrived for her next shift, she was taken into a room and questioned by casino security and the sheriff's department. Thereafter, Magnolia Lady terminated Smith's employment, and the district attorney initiated prosecution against Smith for embezzlement of the money. At the close of the State's case in the criminal trial, the judge granted a motion for directed verdict in favor of Smith. After her acquittal, Smith filed suit against Magnolia Lady, asserting the previously-mentioned claims.
¶ 6. Additional facts will be related as necessary in the analysis section of this opinion.

ANALYSIS AND DISCUSSION OF THE ISSUES

1. Summary Judgment
¶ 7. When reviewing the grant of a motion for summary judgment, we look at the trial court's decision de novo. Aladdin Constr. Co. v. John Hancock Life Ins. Co., 914 So.2d 169, 174 (¶ 9) (Miss.2005) (quoting Noxubee County Sch. Dist. v. United Nat'l Ins. Co., 883 So.2d 1159, 1163 (¶ 6) (Miss.2004)). In conducting our review, we look at "all evidentiary matters, including admissions in pleadings, answers to interrogatories, depositions, and affidavits." Id. (citations omitted). We look at the evidence "in the light most favorable to the party against whom the motion for summary judgment has been made," here Smith. Id. at 175 (¶ 9) (citations omitted). If our review uncovers any genuine issue of material fact, the decision of the lower court must be reversed. Id. (quoting Mabus v. Saint James Episcopal Church, 884 So.2d 747, 756 (¶ 17) (Miss.2004)). However, Smith must provide "significant probative evidence showing that there are indeed genuine issues of material fact" in order to prevail. Id. (quoting Murphree v. Fed. Ins. Co., 707 So.2d 523, 529 (Miss. 1997)).
¶ 8. Smith contends that the court erred in granting summary judgment to Magnolia Lady, and argues that genuine issues of material fact exist as to each of her claims. *902 Therefore, we will address each of Smith's claims separately.

Wrongful Discharge
¶ 9. Smith's basis for this argument is that she believed that after she had worked at Magnolia Lady for ninety days she would become a permanent employee. Therefore, she contends, since she was terminated after working more than ninety days, she was wrongfully discharged. Smith argues specifically that her status as a "permanent hire" was a factual determination that should have gone to a jury. Smith contends that Magnolia Lady failed to follow "certain steps outlined in the Employee Handbook" before firing her.
¶ 10. Our review of the employee handbook refutes Smith's contention that Magnolia Lady failed to follow the required steps before terminating her. The lengthy list of activities that team members are prohibited from doing includes "[u]nauthorized possession, use or removal of property belonging to [Magnolia Lady]" and "[d]ishonesty or failure to follow cash handling procedures." Smith's conduct that led to her termination was prohibited by both of these rules. The handbook clearly states:
Management has the right to determine whether particular conduct which may not be described in these rules or in the team member handbook, is not in the best interest of the Lady Luck or its operations and therefore warrants disciplinary action or termination. Management has the sole right to determine the type and sequence of discipline, if any. In addition, whether the particular conduct contravenes any of these rules will be determined solely by management, whose decisions or judgements on the foregoing matters are final and binding.
(emphasis added). The handbook provides a step-by-step process for contesting a termination, but the first step is that "[a] team member has forty-eight hours to notify the Director of Human Resources of his/her grievance." There is nothing in the record to reflect that Smith ever took this required step to begin a contest of her termination. In the absence of action by Smith, Magnolia Lady was free to discipline her as outlined in the handbook. Therefore, upon the record before us, Magnolia Lady did not fail to follow the proper steps before terminating Smith.
¶ 11. Additionally, we note that Smith was undoubtedly an at-will employee, and therefore, terminable at any time for any reason. Smith's application for employment, which she signed and dated, contains the following:
I hereby understand and agree that my employment, both during and after any introduction period is at will, and that nothing in this application or any other company document shall be deemed to create any contract or employment between me and the company and that my employment can be terminated at any time by myself or the company for any or no cause. I understand that my employment beyond the introductory period shall not result in any heightened expectation of continued employment. I understand and agree that any statements to the contrary, whether oral or written, are expressly disavowed and are not to be relied upon by me. . . .
The above passage, in contrast to most of the application, is underlined to provide emphasis. The instructions at the top of the page instruct the applicant to "read carefully before signing." The first page of the employee handbook reiterated: "The employment and compensation of any team member can be terminated at any time at the option of the company or the team member with or without cause or notice." Several sections of the handbook contained the disclaimer: "The company *903 reserves the right to terminate employment at will."
¶ 12. Given the undisputed at-will nature of Smith's employment, and the fact that Magnolia Lady did not fail to follow any required steps before terminating Smith's employment, we find that Smith has failed to show that there is any genuine issue of material fact on this issue. Therefore, summary judgment was properly granted on this claim.

Malicious Prosecution
¶ 13. In Mississippi, there are six elements that a plaintiff must prove, by a preponderance of the evidence, in order to prevail on a claim of malicious prosecution:
(1.) The institution or continuation of original judicial proceedings, either criminal or civil;
(2.) by, or at the insistence of the defendants;
(3.) the termination of such proceeding in plaintiff's favor;
(4.) malice in instituting the proceedings;
(5.) want of probable cause for the proceedings; and
(6.) the suffering of damages as a result of the action or prosecution complained of.
Van v. Grand Casinos of Miss., Inc., 724 So.2d 889, 891 (¶ 8) (Miss.1998) (citations omitted).
¶ 14. Smith contends that "charges were filed by law enforcement against [her] at the insistence of the defendant." We find that the record does not support this claim. Magnolia Lady admitted that they called the sheriff's department to conduct an investigation into the incident,[1] but the arresting officer testified in his deposition that "I made the arrest. I mean, it's my decision to make the arrest." The affidavit supporting Smith's arrest was signed by the arresting officer, not by an employee of Magnolia Lady. Additionally, the assistant district attorney who prosecuted Smith's criminal case submitted an affidavit stating:
To the best of my recollection, once the file was turned over to the district attorney's office, neither casino personnel nor the sheriff's office were asked for further input except to the extent that either of [sic] both may have been called to testify before the grand jury. . . . Although we, as prosecutors, often rely upon input from victims of crime, as Lady Luck appeared to be in this case, I have no recollection of ever discussing this case with employees of the casino other than to make them aware of whatever plea offers we may have made. . . .
The above excerpts directly refute Smith's claim that her arrest and prosecution were conducted at the "insistence" of Magnolia Lady. No evidence appears in the record to support her assertion that her prosecution occurred "by, or at the insistence of," Magnolia Lady.
¶ 15. Even if Smith had proved that criminal proceedings were instituted against her at Magnolia Lady's insistence, we find that the record is devoid of any evidence indicating that Magnolia Lady lacked probable cause, another element of malicious prosecution. The videotape clearly showed Smith taking ten thousand unmarked dollars and concealing them on a cart that was then rolled out of the room. Smith was able to provide no explanation whatsoever for these suspicious actions, and she herself admitted during her deposition *904 that it was "reasonable" for Magnolia Lady to suspect her of "attempting to steal that money" after viewing the tape.
¶ 16. Since Smith has been unable to show any genuine issue of material fact concerning at least two elements of her claim of malicious prosecution, we find that the court's grant of summary judgment as to this claim was proper.

False Imprisonment
¶ 17. There are two elements that a plaintiff must prove in order to succeed on a false imprisonment claim: "(1) the detention of the plaintiff; and (2) the unlawfulness of such detention." Alpha Gulf Coast, Inc. v. Jackson, 801 So.2d 709, 720 (¶ 28) (Miss.2001) (citing Wallace v. Thornton, 672 So.2d 724, 727 (Miss. 1996); Thornhill v. Wilson, 504 So.2d 1205, 1208 (Miss.1987)). The Mississippi Supreme Court has explained that the second element is determined by looking at "whether, `looking at the totality of the circumstances, the actions of the Defendant were objectively reasonable in their nature, purpose, extent and duration.'" Id. (quoting Wallace, 672 So.2d at 727).
¶ 18. During her deposition, Smith testified that she had gone with Magnolia Lady employees to an office for questioning. She testified that she was there "[a]n hour and forty-five minutes, something like that." When asked whether she was "on the boat and . . . wanted to leave and . . . [was] not permitted to do so," Smith responded that "I didn't think I could just walk out of there. There was a police officer there with a gun on his hip." When asked if anyone had told her specifically that she could not leave, Smith responded: "No, but I sure wasn't getting up." Smith also testified that she did not tell anyone that she wanted to leave or wanted to stop answering questions. Smith further testified that no one threatened her physically or ever told her that she could not leave.
¶ 19. Smith's testimony leaves serious doubt as to whether she was truly detained, since she never attempted to leave or even asked to do so. However, even assuming the evidence is sufficient to show her detention, there is no evidence that her detention was unlawful. Magnolia Lady and the sheriff's department were clearly reasonable in wanting to question Smith, given her suspicious actions on the video footage. As we have already found, probable cause existed for the investigation of Smith's actions. Smith herself admitted that it was reasonable for the casino to suspect foul play after watching the first part of the videotape. Regardless of the fact that the cash never left the casino, and was eventually recovered by Magnolia Lady, Smith's transfer of ten thousand dollars to a location that she herself testified that the money should not have been was suspicious enough to make her questioning reasonable. Therefore, we find that no genuine issue of material fact exists with regard to Smith's false imprisonment claim, and the grant of summary judgment dismissing that claim was proper.

Defamation
¶ 20. In order to succeed on a claim of defamation, a plaintiff must prove: "(1) a false and defamatory statement concerning plaintiff; (2) unprivileged publication to [a] third party; (3) fault amounting at least to negligence on [the] part of [the] publisher; and (4) either actionability of statement irrespective of special harm or existence of special harm caused by publication." Armistead v. Minor, 815 So.2d 1189, 1193 (¶ 7) (Miss.2002) quoting (Franklin v. Thompson, 722 So.2d 688, 692 (¶ 12) (Miss.1998)). "The threshold question in a defamation suit is whether the published statements are false." Franklin, 722 So.2d at 692 (¶ 13) (citations omitted). A statement is defamatory when it *905 "tends to injure one's reputation, and thereby expose him to public hatred, contempt or ridicule, degrade him in society, lessen him in public esteem or lower him in the confidence of the community." Id. (quoting Fulton v. Miss. Publishers Corp., 498 So.2d 1215, 1217 (Miss.1986)). "Truth is [a] complete defense to libel or slander." Id. at 692(¶ 14) (citing Daniels by Glass v. Wal-Mart Stores, Inc., 634 So.2d 88, 92 (Miss.1993)).
¶ 21. Smith maintains that Magnolia Lady defamed her by publishing false statements to the Illinois Unemployment Commission and to "several of Plaintiff's former co-workers." Smith contends that her deposition testimony was undisputed and shows that "genuine issues of material fact exist even to this day."
¶ 22. As regards the Illinois Unemployment Commission, after reviewing the record, there is no evidence that a false statement was given to the commission. The letter sent to Smith stated: "The claimant was discharged from LADY LUCK CASINO because OF LARGE SUMS OF MONEY MISSING. Since the reason for which the claimant was discharged constituted a violation of a known and reasonable company rule, the claimant was discharged for misconduct connected with the work. Therefore, the claimant is ineligible for benefits. . . ." The letter makes it clear that the commission had been informed that Smith was terminated for money that had gone missing, and that the conduct constituted a violation of company policy. The statements above are undoubtedly true: Smith did cause money to go missing, if only temporarily, and her actions in misplacing a stack of ten thousand dollars certainly constituted "misconduct connected with the work." Therefore, since no false statement was made to the commission, no defamation could arise as a result of Magnolia Lady's statements to the commission.
¶ 23. As to the statements that were allegedly made to former co-workers, the only proof of such statements was Smith's testimony that she had been told by several of her former co-workers that they were brought into a meeting with management where they were informed that Smith had been terminated for theft. Despite asserting that she had talked to several people who said this, Smith did not present affidavits or depositions for any of them.[2] One former co-worker, Linda Bunch, submitted an unsworn statement stating:
I did not attend and have no knowledge of any meeting . . . regarding the allegations of theft on the part of Michelle or Shellie Smith. To the best of my recollection, I never advised Michelle or Shellie Smith regarding any such meeting. The only knowledge I had regarding the allegations against Shellie came as a result of rumors at the casino told me by other cashiers, not by anyone in management of the casino.
During her deposition, Smith presented numerous theories that Magnolia Lady had told third parties about the incident, *906 but when asked for evidence of these communications, she testified: "I have no proof." Since Smith was unable to present any proof other than her own statements of conjecture and suspicion that Magnolia Lady had defamed her, summary judgment was properly granted on this claim.

2. Motion to Dismiss
¶ 24. In her final suggestion of error, Smith argues that the court erred in granting Magnolia Lady's motion to dismiss, because the court had already denied a motion for summary judgment on the same claim. Magnolia Lady attempts to distinguish between the two motions, and argues that their distinct nature means that the court did not err in granting the second motion. While we find no merit to Magnolia Lady's argument that the court's decision was proper because the motions were somehow distinct, we find that no harm was caused to Smith by the grant of the motion to dismiss because the claim should have been dismissed during summary judgment, as we will further explain below.
¶ 25. Magnolia Lady argues that the claim should fail because Mississippi does not recognize the tort of injurious falsehood. While we agree that Mississippi has not yet recognized the tort of injurious falsehood, we note that it is a common law tort, and is also known as "trade libel," "commercial disparagement," and "slander of title." See State ex rel. Diehl v. Kintz, 162 S.W.3d 152, 156 n. 4 (Mo.Ct.App.2005) (citing Cuba's United Ready Mix, Inc. v. Bock Concrete Foundations, Inc., 785 S.W.2d 649, 651 (Mo.Ct.App.1990)); Wagner v. Fleming, 139 S.W.3d 295, 301-02 (Tenn.Ct.App.2004) (citations omitted). While Mississippi has not recognized a tort of injurious falsehood, slander of title is an accepted tort in this state. Therefore, this Court is not prepared to say that a claimant may not successfully assert a claim of injurious falsehood in Mississippi.
¶ 26. However, even if Mississippi recognized the tort of injurious falsehood, it is clear that Smith did not succeed in presenting a genuine issue of material fact concerning her injurious falsehood claim. A commonly accepted element of injurious falsehood is that of economic or pecuniary damages; as one court put it, "[injurious falsehood] is closely related to traditional libel and slander except that the injury is not to personal reputation, but rather to the plaintiff's interest in, or the quality of, the plaintiff's property." State v. Ross, 163 S.W.3d 922, 928-29 (Mo. 2005); Whetstone Candy Co. v. Nat'l Consumers League, 360 F.Supp.2d 77, 81-82 (D.D.C.2004) (citations omitted). See also Smart, Inc. v. V.I. Hous. Auth., 320 F.Supp.2d 332, 340 (D.Vi.2004); Falic v. Legg Mason, 347 F.Supp.2d 1260, 1268 (S.D.Fla.2004).
¶ 27. Smith was completely unable to show any proof of economic damages. Like defamation, the tort of injurious falsehood requires that a statement be false. See Ross, 163 S.W.3d at 928; Zdenek Marek v. Old Navy, Inc., 348 F.Supp.2d 275, 281 (S.D.N.Y.2004) (quoting Waste Distillation Tech., Inc. v. Blasland & Bouck Eng'rs, P.C., 136 A.D.2d 633, 634, 523 N.Y.S.2d 875 (1988)); Smart, 320 F.Supp.2d at 340; Whetstone Candy, 360 F.Supp.2d at 81-82. Since, as previously discussed, no false statement was made to the Illinois Unemployment Commission, the denial of Smith's unemployment benefits is not sufficient to show a genuine issue of material fact concerning her claim for injurious falsehood. Beyond the denial of her unemployment benefits, Smith provided no proof whatsoever that she had suffered economic damages. Smith's primary offer of proof was her assertion that she has been unable to find work in the casino industry since the incident. *907 However, during her deposition, she admitted that she has no proof that any damaging statements were made to potential employers by Magnolia Lady.
¶ 28. Since there was no genuine issue of material fact concerning Smith's economic damages and the publication of the statement, summary judgment should have been granted on the injurious falsehood claim. That the court incorrectly denied Magnolia Lady's motion for summary judgment on the claim does not make the claim sufficient to proceed to trial. Since the court should have dismissed the claim at summary judgment, no injury arose to Smith when the court did so at a later date. Therefore, we find no merit in Smith's second and final suggestion of error.
¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. GRIFFIS, J. CONCURS IN PART AND IN RESULT.
NOTES
[1] The security manager for Magnolia Lady testified in his deposition that Magnolia Lady did not ask the sheriff's department to prosecute Smith, but simply "turned it over and told him to go ahead and investigate this. He said he was going to handle it."
[2] Smith did submit one affidavit with her motion for reconsideration after the court had already granted summary judgment on her defamation claim. Since the motion for reconsideration was filed untimely and properly dismissed by the court, the affidavit has no impact on Smith's defamation claim. Even if the affidavit had been timely submitted, the affiant states only that she "believes" the statement transmitted to her had a negative impact on Smith's employability in the casino industry. Since an affiant's belief is not enough to create a genuine issue of material fact without further proof, this affidavit would not be sufficient to overcome summary judgment even if it had been timely submitted to the court.