22 So.3d 284 (2009)
ENTERGY MISSISSIPPI, INCORPORATED, Appellant,
v.
TCA CABLE PARTNERS d/b/a Cox Communications, Appellee.
No. 2006-CA-01258-COA.
Court of Appeals of Mississippi.
January 14, 2009.
Rehearing Denied July 28, 2009.
Certiorari Denied October 22, 2009.
*285 Walter Alan Davis, John H. Dunbar, Oxford, James W. Snider, Jackson, attorneys for appellant.
M.W. Zummach, attorney for appellee.
EN BANC.
GRIFFIS, J., for the Court.
¶ 1. Entergy Mississippi, Inc. ("Entergy") appeals a summary judgment granted in favor of TCA Cable Partners d/b/a Cox Communications ("TCA") and the subsequent denial of Entergy's motion to alter or amend the judgment. On appeal, Entergy argues that: (1) the trial court erred when it found no genuine issue of material fact existed as to Entergy's claim of indemnity against TCA; (2) TCA breached the Entergy/TCA Agreement when it failed to provide insurance; and (3) Entergy's attorneys' fees incurred in defense of claims made by Troy P. Cremeen should be covered under the terms of the Agreement and reimbursed by TCA. We find reversible error and render judgment in favor of Entergy against TCA in the amount of $28,852.82, together with pre-and post-judgment interest thereon.

FACTS
¶ 2. On October 1, 1989, Mississippi Power and Light, which was later renamed Entergy, entered into a television cable agreement (the "Agreement") with Telecable Associates, Inc. d/b/a Delta Cablevision, Inc ("Telecable"). This Agreement was later assigned by Telecable to TCA. The Agreement allowed TCA to utilize Entergy's utility poles for placement of television cables.
¶ 3. As a result, television cables were placed on Entergy's utility poles over a large geographic area, which included *286 property located in Washington County. A television cable was affixed to a utility pole located on real property owned by Cremeen, a resident of Greenville. Cremeen was working on his property when he walked into a cable/wire and was severely injured.
¶ 4. On December 6, 2002, Cremeen filed a complaint alleging that he was injured by walking "into a power transmission cable owned and/or operated by BellSouth and/or Entergy," which he claims was "negligently suspended between two utility poles." TCA was not originally named as defendant in the suit. When it was later discovered that TCA owned a cable located on the utility pole, TCA was added as a defendant in the third and fourth amended complaints, dated March 2, 2003, and September 5, 2003, respectively. In his fourth amended complaint, Cremeen changed his allegation to read that he walked into "a cable" instead of a "power transmission cable."[1]
¶ 5. On November 24, 2003, Entergy sent a demand letter to TCA. Entergy demanded a defense and indemnity based on the Agreement. On the same day, Entergy also propounded requests for admission to TCA, which asked TCA to admit that it was bound to indemnify Entergy against Cremeen's claims. A second letter from Entergy to TCA, dated November 26, 2003, indicated that counsel for both Entergy and TCA had discussed the previous demand letter. Also included in the letter was a request for a copy of the comprehensive general liability insurance policy as required under the terms of the Agreement. On January 13, 2004, TCA's counsel sent a letter to Entergy stating that the request for indemnification and defense was still being considered, but no decision had been made. TCA did not provide Entergy with a copy of the requested insurance policy.
¶ 6. The preamble to the Agreement states that "complete indemnification of Licensor [Entergy] is contemplated hereunder." Section 10 provides:
Licensee [TCA] shall indemnify, protect and save harmless Licensor [Entergy] from and against any and all claims and demands for damages to property and injury or death to any person, including, but not restricted to, employees of Licensee and employees of any Contractor or sub-contractor performing work for Licensee, and also including payments made under any workmen's compensation law or under any plan for employees' disability and death benefits, which may arise out of or be caused by the erection, maintenance, presence, use or removal of said attachments or by the proximity of the respective cables, wires, apparatus and appliances of the parties hereto, or by any act of Licensee on or in the vicinity of Licensor's poles, or other poles permitted by law, any such damages, injury or death claimed to have been due to negligence of the Licensor.
(Emphasis added). Additionally, Section 11 required TCA to maintain and furnish evidence of comprehensive general liability insurance, in the amount of at least $1,000,000 per occurrence; it further required that Entergy be named as an additional insured on the liability policy.
¶ 7. On February 20, 2004, Cremeen voluntarily dismissed TCA from the lawsuit with prejudice. At the same time, the trial court granted Entergy's motion for leave to file a cross-claim against TCA. In his fifth and final amended complaint, Cremeen again only named Entergy and BellSouth *287 as defendants. On September 7, 2004, Entergy filed its cross-claim against TCA. Then, on November 18, 2004, Entergy filed a motion for summary judgment with respect to Cremeen's claims, which the trial court granted on April 6, 2005. At that point, Entergy and TCA were no longer parties to the original complaint filed by Cremeen.
¶ 8. Entergy subsequently filed a motion for summary judgment against TCA based on its claim for indemnity against Cremeen's claims and requested a "judgment in favor of [Entergy] in the amount of $28,852.82, plus costs and interest." TCA responded and entered its motion for summary judgment on October 11, 2005. By opinion and order entered on December 2, 2005, the trial judge denied Entergy's motion and awarded summary judgment to TCA dismissing Entergy's claims with prejudice. Entergy filed a motion to alter or amend judgment on December 12, 2005, which was subsequently denied by the trial court.

STANDARD OF REVIEW
¶ 9. "When reviewing the grant of a motion for summary judgment, we look at the trial court's decision de novo." Smith v. Magnolia Lady, Inc., 925 So.2d 898, 901(¶ 7) (Miss.Ct.App.2006) (citation omitted). In reviewing all the "evidentiary matters, including admissions in pleadings, answers to interrogatories, depositions, and affidavits[,]" we must examine the evidence presented "in the light most favorable to the party against whom the motion for summary judgment has been made[.]" Id. "When viewed as such, if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law, summary judgment is appropriate." Phillips v. Enter. Transp. Serv. Co., 988 So.2d 418, 420(¶ 10) (Miss. Ct.App.2008).

ANALYSIS

Whether the trial court erred in granting TCA's motion for summary judgment.
¶ 10. Entergy's cross-claim asked for reimbursement of its costs of defending Cremeen's claim. Entergy argues that such payment is required under TCA's contractual obligations to: (1) "protect" and "completely indemnify" Entergy (Section 10 of the Agreement) and (2) provide comprehensive liability insurance coverage that would have provided a defense if TCA had obtained a policy and advised Entergy of the name of the insurance carrier (Section 11 of the Agreement).
¶ 11. Section 10 of the Agreement required that TCA "shall indemnify, protect and save harmless [Entergy] from and against any and all claims and demands for damages ... which may arise out of or be caused by the erection, maintenance, presence, use or removal of said attachments...." Cremeen's claims against Entergy were certainly "claims and demands" which arose "out of" or were "caused by" TCA's placement of television transmission cables under the Agreement. The dissent agrees that Cremeen's claim, if a judgment had been entered in his favor, would be subject to the indemnification provision of Section 10, and TCA would have been responsible to Entergy under this provision of the Agreement.
¶ 12. The reimbursement of Entergy's attorneys' fees, however, is a separate issue. Entergy's claim for reimbursement of attorneys' fees comes not from Section 10 but from Section 11 of the Agreement. We find that Section 10 may be interpreted independent of Section 11. Indeed, the purpose for Section 11 is to provide "insurance" that would cover TCA's indemnification responsibility under Section 10 and a *288 defense to any such claims provided by the insurance carrier.
¶ 13. On November 24, 2003, Entergy made a demand for defense and indemnity against TCA based on their Agreement. Entergy also requested a copy of the insurance policy that required TCA to list Entergy as an "additional insured." TCA has not accepted the indemnification and defense of Entergy and has not provided a copy of the required insurance policy. By letter dated January 13, 2004, TCA's counsel notified Entergy that the request for indemnification and defense was being considered, but a decision had not yet been made. TCA did not provide any further response to Entergy's indemnification demand and never provided a copy of an insurance policy that named Entergy as an additional insured.[2]
¶ 14. Here, TCA offered no evidence to establish that it fulfilled its contractual obligation to provide an insurance policy that named Entergy as an additional insured. Hence, Entergy claims that TCA is liable for its attorneys' fees because TCA wrongfully refused to defend or provide a defense to Entergy.
¶ 15. In Travelers Insurance Co. v. General Refrigeration & Appliance Co., 218 So.2d 724, 727 (Miss.1969), the supreme court held that "the appellant wrongfully refused to defend appellee and thereby the appellant as insurer became liable for attorneys' fees incurred and paid in the successful defense of the chancery suit." Likewise, the following language from the opinion sums up TCA's liability to Entergy:
Heretofore this Court has addressed the contractual duty of a liability insurance carrier to defend suits brought against the insured. It is a serious duty, requiring a good faith effort to protect the insured's interest in court. There is no higher ethical duty in the legal profession than complete, absolute fidelity to the interest of the client. An attorney obviously should not attempt to represent a party when he is obligated to represent an adverse interest, and a conflict of interest appears.
Because Commercial Union had a clear duty to defend, which duty State Farm as the secondary carrier fulfilled upon Commercial Union's failure to do so, it follows State Farm is entitled to all reasonable *289 and necessary expenses in fulfilling Commercial Union's obligations.
State Farm Mut. Auto. Ins. Co. v. Commercial Union Ins. Co., 394 So.2d 890, 894 (Miss.1981) (internal citations omitted).
¶ 16. The dissent attempts to distinguish Travelers Ins. Co. on the grounds that "it directly involved the insurance company, and the terms of the policy were provided in the record." This argument fails when the damages that naturally flow from the breach of Section 11 are considered. If Entergy had been aware of TCA's failure to procure insurance and Entergy had purchased such a policy, the damages would be the cost of the insurance premiums paid. Here, however, the damages that naturally flow from TCA's breach are the amount of money Entergy expended defending the litigation. Indeed, Entergy would not have incurred that amount had TCA honored Section 11 of the Agreement and procured insurance that would have defended Entergy from Cremeen's claims.
¶ 17. The trial court's summary judgment in favor of TCA failed to consider TCA's obligations to indemnify and defend Entergy against Cremeen's claims under Sections 10 and 11 of the Agreement. Accordingly, we reverse the summary judgment granted in favor of TCA. Further, we find summary judgment in favor of Entergy was appropriate and render judgment in favor of Entergy in the amount of $28,852.82, together with pre- and post-judgment interest thereon.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE AND MYERS, P.JJ., ISHEE, CARLTON AND MAXWELL, JJ., CONCUR. BARNES, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J., IRVING AND ROBERTS, JJ.
BARNES, J., concurring in part, dissenting in part.
¶ 19. Although I concur with the majority that the trial court erred in granting summary judgment to TCA Cable Partners (TCA), I must respectfully dissent with the majority's decision to reverse and render judgment awarding Entergy Mississippi, Inc. (Entergy) attorneys' fees, pre- and post-judgment interest and costs of court. I am of the opinion that the case should be reversed and remanded for further proceedings as Entergy has not yet proved it is entitled to a judgment as a matter of law against TCA.
¶ 20. There are three contractual provisions at issue in the case before us: the preamble to the Agreement which states that "complete indemnification of Licensor [Entergy] is contemplated hereunder[,]" Section 10 which provides for indemnification against any "claims and demands for damages[,]" and Section 11 which requires TCA to maintain and furnish evidence of comprehensive general liability (CGL) insurance. The majority reads these provisions together to find an "obligation to indemnify and defend" Entergy from the claims asserted by Troy P. Cremeen. I disagree. While the parties may have intended for Sections 10 and 11 to work together to provide "complete indemnification," I find that we must review the clauses as written. The Agreement makes no reference to a duty by TCA to defend Entergy against claims made. Entergy may be entitled, after further proceedings, to the amount expended in attorneys' fees as damages against TCA for breach of the duty to provide CGL insurance or the duty *290 of good faith and fair dealing. However, I cannot agree that Entergy is entitled, at this juncture, to attorneys' fees against TCA under a duty to defend.

I. Section 10 Indemnity Provision
¶ 21. Section 10 of the Agreement stated that TCA had an obligation to "indemnify, protect and save harmless [Entergy] from and against any and all claims and demands for damages to property and injury or death to any person ... caused by the erection, maintenance, presence, use or removal of said attachments or by the proximity of the respective cables, wires, apparatus and appliances of the parties...." This obligation extended to "any such damages, injury or death claimed to have been due to [the] negligence of [Entergy]" that was caused by "any act of [TCA] on or in the vicinity of [Entergy]'s poles[.]"
¶ 22. As Entergy was dismissed from the original complaint, and no legal liability was established with respect to Cremeen's claims against Entergy, the only issue remaining in regard to the indemnification clause is whether it covered Entergy's attorneys' fees, from the point when TCA became a party to the suit. Entergy states that it incurred $29,642.84 in attorneys' fees for the defense of the claims arising from the underlying claims asserted by Cremeen. The trial court's order stated that the Agreement failed to contemplate attorneys' fees; therefore, summary judgment for TCA was warranted.
¶ 23. Entergy cites Blain v. Sam Finley, Inc., 226 So.2d 742 (Miss.1969) for the "general rule" regarding indemnification for attorneys' fees. In Blain, the Mississippi Supreme Court stated:
As a general rule an indemnitee is entitled to recover, as a part of the damages, reasonable attorneys' fees and reasonable and proper legal costs and expenses which he is compelled to pay as a result of suits by or against him in reference to the matter against which he is indemnified, provided that under all of the circumstances of the case he acts in good faith and with due diligence in prosecuting or defending such suits. This rule is especially applicable where the indemnitor is notified and given an opportunity to contest the adverse litigation but fails or refuses to do so....
Id. at 745-46. I note, however, that the supreme court explained that "[w]hen the contract expressly indemnifies a person against the costs and expenses incident to certain acts, or arising from a certain claim, it extends to the costs and expenses of defending groundless suits." Id. at 745 (citing B&G Elec. Co. v. G.E. Bass & Co., 252 F.2d 698, 701 (5th Cir.1958)) (emphasis added). I find Blain distinguishable as the contract at issue in that case expressly referred to expenses and attorneys' fees. There is no such express provision in the Agreement at issue in the case before us.
¶ 24. Entergy argues that even if this Court does not follow the "general rule" set forth in Blain, the preamble to the Agreement contemplated "complete indemnification"; therefore, the payment of attorneys' fees is warranted. "Where there is an indemnification agreement, `it is the parties' intent which controls the propriety of attorney fees.'" Microtek Med., Inc. v. 3M Co., 942 So.2d 122, 128(¶ 17) (Miss.2006) (overruled on other grounds) (citations omitted).
¶ 25. However, the Mississippi Supreme Court has also stated: "[O]ur concern is not nearly so much what the parties may have intended as it is what they said, for the words employed are by far the best resource for ascertaining intent and assigning meaning with fairness and accuracy." Sanderson Farms, Inc. v. Gatlin, 848 So.2d 828, 836(¶ 20) (Miss.2003). Mississippi "follows the American rule regarding *291 attorney fees," which states that "[u]nless there is a contractual provision or statutory authority providing for attorney fees, they may not be awarded as damages unless punitive damages are also proper." Kennedy v. Anderson, 881 So.2d 340, 348(¶ 36) (Miss.Ct.App.2004). Therefore, "unless provided by statute or contract ... attorneys' fees may not be recovered." Tupelo Redevelopment Agency v. Gray Corp., 972 So.2d 495, 517(¶ 68) (Miss.2007).
¶ 26. In Kinsinger v. Taco Tico, Inc., 861 So.2d 669, 673 (La.Ct.App.2003), the Louisiana Court of Appeals stated:
We agree that an indemnification agreement may impose the obligation to pay reasonable attorney fees in some instances when the obligation to pay attorney fees is not specifically identified in the indemnification agreement, but is implied by inference. However, we hold that in order for the indemnitor to be liable for attorney fees the indemnification language must be sufficient to infer the obligation.
In other words, the indemnification language must imply a level of indemnification beyond just the obligation to pay claims or damages. Id. In Kinsinger, the indemnification language only stated that the indemnity was for "any claims or damages" and failed to specify a duty to defend or pay expenses. Id. at 671-72. The appellate court concluded that the "limited indemnification language" of the contract at issue did not impose an "obligation to pay attorneys fees[,]" relying on the general rule that, absent a specific provision or language in the indemnification contract, attorneys' fees and defense costs are not owed. Id. at 673.
¶ 27. The indemnification language contained in Section 10 of the Agreement, like the language in Kinsinger, refers only to indemnification from "claims and damages." Consequently, I find, as did the trial court, that such language does not impose an obligation on the part of TCA to pay attorneys' fees under this provision. Although the preamble to the Agreement stated that "complete indemnification" was contemplated, I find this language insufficient to expand the limited provision of Section 10, which negates any implication of an inclusion for attorneys' fees. Therefore, I would affirm the trial court's findings on this issue.

II. The Section 11 Provision of CGL Insurance
¶ 28. Entergy next argues that TCA clearly breached its contractual duty by not providing evidence of the CGL insurance policy, as required by the Agreement, and requests that this Court reverse and render on the issue of insurance coverage. The trial judge failed to address this issue which TCA maintains was moot based on the granting of summary judgment in its favor. I agree with the majority that TCA's argument is misplaced. The Alabama Supreme Court has noted that:

A contractual obligation to indemnify is distinct from a contractual obligation to procure insurance. Under an agreement to indemnify, the promisor assumes liability for all injuries and damages upon the occurrence of a contingency. In contrast, an agreement to obtain insurance involves the promisor's agreement to obtain or purchase insurance coverage, regardless of whether [a] contingency occurs.
Goodyear Tire & Rubber Co. v. J.M. Tull Metals Co., 629 So.2d 633, 639 (Ala.1993) (emphasis added).
¶ 29. Section 11 of the Agreement states in pertinent part:
Licensee shall effect, maintain and furnish evidence of insurance satisfactory to the Licensor ...:

*292 (b)(I) Comprehensive General Liability Insurance including Contractual Liability Coverage and Personal Injury Coverage.
(c) Licensee's insurance policy required by paragraph (b) above shall name Licensor, and its affiliated and associated companies as additional insureds. Licensee hereby waives all rights of recourse against Licensor, and its affiliated and associated companies for bodily injury, including death and property damage. All of Licensee's policies of insurance are to provide Licensor with 30 days prior written notice of cancellation or any material adverse change. Licensee shall, before making any attachments to poles of Licensor hereunder, provide Licensor with Certificates of Insurance upon execution of the Agreement which shall include the type of policy issued, occurrence or claims made, and specifically address that the required endorsements are provided (i.e., additional insureds and waiver of subrogation.).
TCA claims that Entergy must have been provided with certificates of insurance at the execution of the Agreement; otherwise, Entergy would not have continued with the Agreement. It is disingenuous for TCA to claim that it was not obligated to provide a copy of the entire policy, rather only the certificate of insurance, and then decline to furnish that certificate based upon its contention that Entergy should already have the certificate in its possession. Any such certificate would have been dated approximately fifteen years prior to the claims asserted here. I agree with the majority that "[t]he law of Mississippi imposes an obligation of good faith and fundamental fairness in the performance of every contract governed thereby[.]" Vicksburg Partners, L.P. v. Stephens, 911 So.2d 507, 525(¶ 47) (Miss. 2005) (quoting Bank of Indiana, Nat'l Ass'n v. Holyfield, 476 F.Supp. 104, 109 (S.D.Miss.1979)); see also Baker, Donelson, Bearman & Caldwell, P.C. v. Muirhead, 920 So.2d 440, 451(¶ 40) (Miss.2006) ("[t]he duty of good faith and fair dealing attends all contracts interpreted under Mississippi law"). For TCA to withhold the policy, which should have been readily available, may be a violation of its good faith obligation as a contracting party and may subject TCA to damages for that breach if it is now too late for Entergy to file a claim under the policy. I cannot see, however, that it transforms TCA into the insurer.[3]
¶ 30. The majority cites Travelers Ins. Co. v. General Refrigeration & Appliance Co., 218 So.2d 724, 727 (Miss.1969), for the proposition that when there is a contractual duty to defend, the insured is entitled to "all reasonable and necessary expenses" in fulfilling that obligation. However, I find Travelers distinguishable from the present case in that it directly involved the insurance company, and the terms of the policy were provided in the record. Consequently, the supreme court was able to ascertain Traveler's contractual duty under the policy's terms. In this case, there is no evidence of a contractual duty of TCA to defend Entergy; no insurer was a party to the litigation, and no policy has been admitted into evidence to identify the obligations of the insurer carrier.
¶ 31. Under Section 11 of the Agreement, Entergy was to be named as an *293 additional insured under the CGL insurance policy, and it was to be provided proof of such policy. The Agreement did not require TCA to serve as the insurer. However, the record fails to show whether TCA complied with its contractual duties to provide CGL insurance with Entergy named as an additional insured. Due to this lack of evidence, I conclude that neither TCA, nor Entergy, has proved any entitlement to a judgment as a matter of law.
¶ 32. If TCA did not, in fact, obtain the CGL insurance as required by the Agreement, or if its refusal to provide information required for Entergy to file a claim under the policy precludes Entergy's recovery, TCA may be liable for the costs of defense as damages for breach of contract. However, I cannot hold TCA liable for failing to defend Entergy. Therefore, I would reverse and remand on this issue for further proceedings by the trial court.
KING, C.J., IRVING, AND ROBERTS, JJ., JOIN THIS OPINION.
NOTES
[1] The evidence established that there was no power-transmission line connected to Entergy's utility poleonly telephone and television cable lines.
[2] Often in litigation, counsel may be reluctant to produce a copy of an insurance policy. As a result, counsel may not promptly provide an insurance policy to the other side. The reluctance and delay in the production may be understandable, but it is not permitted. Indeed, Mississippi Rule of Civil Procedure 26(b)(2) specifically provides for the "discovery of the existence and contents of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment."

Similarly, if a contract requires one party to purchase an insurance policy that benefits the other party, then a copy should be provided within a reasonable time and additional copies should be provided as requested. Section 11 expressly required TCA to "furnish evidence of insurance" to Entergy. Further, Mississippi law provides that "[a]ll contracts contain an implied covenant of good faith and fair dealing in performance and enforcement." Cenac v. Murry, 609 So.2d 1257, 1272 (Miss. 1992) (citing Morris v. Macione, 546 So.2d 969, 971 (Miss.1989)). "The breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness or reasonableness." Id. Certainly, the "standards of decency, fairness or reasonableness" required the production of an insurance policy when it was initially requested by Entergy. The failure to provide or the unreasonable delay in providing an insurance policy should be considered a sanctionable event, and courts should not allow parties or counsel to avoid this requirement through delay or complete omission.
[3] I cannot agree with the majority that TCA's withholding of the policy "should be considered a sanctionable event" under the facts of this case. Entergy merely sent an informal request for the policy to TCA; it never utilized the discovery procedures outlined in the Mississippi Rules for Civil Procedure. Accordingly, Entergy could not seek sanctions for violation of the rules.