GRIFFIS, J.,
for the Court.
¶ 1. Entergy Mississippi, Inc. (“Enter-gy”) appeals a summary judgment granted in favor of TCA Cable Partners d/b/a Cox Communications (“TCA”) and the subsequent denial of Entergy’s motion to alter or amend the judgment. On appeal, En-tergy argues that: (1) the trial court erred when it found no genuine issue of material fact existed as to Entergy’s claim of indemnity against TCA; (2) TCA breached the Entergy/TCA Agreement when it failed to provide insurance; and (3) Enter-gy’s attorneys’ fees incurred in defense of claims made by Troy P. Cremeen should be covered under the terms of the Agreement and reimbursed by TCA. We find reversible error and render judgment in favor of Entergy against TCA in the amount of $28,852.82, together with pre- and post-judgment interest thereon.
FACTS
¶ 2. On October 1, 1989, Mississippi Power and Light, which was later renamed Entergy, entered into a television cable agreement (the “Agreement”) with Teleca-ble Associates, Inc. d/b/a Delta Cablevision, Inc (“Telecable”). This Agreement was later assigned by Telecable to TCA. The Agreement allowed TCA to utilize En-tergy’s utility poles for placement of television cables.
¶ 3. As a result, television cables were placed on Entergy’s utility poles over a large geographic area, which included *286 property located in Washington County. A television cable was affixed to a utility pole located on real property owned by Cremeen, a resident of Greenville. Cre-meen was working on his property when he walked into a cable/wire and was severely injured.
¶ 4. On December 6, 2002, Cremeen filed a complaint alleging that he was injured by walking “into a power transmission cable owned and/or operated by BellSouth and/or Entergy,” which he claims was “negligently suspended between two utility poles.” TCA was not originally named as defendant in the suit. When it was later discovered that TCA owned a cable located on the utility pole, TCA was added as a defendant in the third and fourth amended complaints, dated March 2, 2003, and September 5, 2008, respectively. In his fourth amended complaint, Cremeen changed his allegation to read that he walked into “a cable” instead of a “power transmission cable.”[1]
¶ 5. On November 24, 2003, Entergy sent a demand letter to TCA. Entergy demanded a defense and indemnity based on the Agreement. On the same day, Entergy also propounded requests for admission to TCA, which asked TCA to admit that it was bound to indemnify Enter-gy against Cremeeris claims. A second letter from Entergy to TCA, dated November 26, 2003, indicated that counsel for both Entergy and TCA had discussed the previous demand letter. Also included in the letter was a request for a copy of the comprehensive general liability insurance policy as required under the terms of the Agreement. On January 13, 2004, TCA’s counsel sent a letter to Entergy stating that the request for indemnification and defense was still being considered, but no decision had been made. TCA did not provide Entergy with a copy of the requested insurance policy.
¶ 6. The preamble to the Agreement states that “complete indemnification of Licensor [Entergy] is contemplated hereunder.” Section 10 provides:
Licensee [TCA] shall indemnify, protect and save harmless Licensor [Entergy] from and against any and all claims and demands for damages to property and injury or death to any person, including, but not restricted to, employees of Licensee and employees of any Contractor or sub-contractor performing work for Licensee, and also including payments made under any workmen’s compensation law or under any plan for employees’ disability and death benefits, which may arise out of or be caused by the erection, maintenance, presence, use or removal of said attachments or by the proximity of the respective cables, wires, apparatus and appliances of the parties hereto, or by any act of Licensee on or in the vicinity of Licensor’s poles, or other poles permitted by law, any such damages, injury or death claimed to have been due to negligence of the Li-censor.
(Emphasis added). Additionally, Section 11 required TCA to maintain and furnish evidence of comprehensive general liability insurance, in the amount of at least $1,000,000 per occurrence; it further required that Entergy be named as an additional insured on the liability policy.
¶ 7. On February 20, 2004, Cremeen voluntarily dismissed TCA from the lawsuit with prejudice. At the same time, the trial court granted Entergy’s motion for leave to file a cross-claim against TCA. In his fifth and final amended complaint, Cre-meen again only named Entergy and Bell- *287 South as defendants. On September 7, 2004, Entergy filed its cross-claim against TCA. Then, on November 18, 2004, Enter-gy filed a motion for summary judgment with respect to Cremeen’s claims, which the trial court granted on April 6, 2005. At that point, Entergy and TCA were no longer parties to the original complaint filed by Cremeen.
¶ 8. Entergy subsequently filed a motion for summary judgment against TCA based on its claim for indemnity against Cre-meen’s claims and requested a “judgment in favor of [Entergy] in the amount of $28,852.82, plus costs and interest.” TCA responded and entered its motion for summary judgment on October 11, 2005. By opinion and order entered on December 2, 2005, the trial judge denied Entergy’s motion and awarded summary judgment to TCA dismissing Entergy’s claims with prejudice. Entergy filed a motion to alter or amend judgment on December 12, 2005, which was subsequently denied by the trial court.
STANDARD OF REVIEW
¶ 9. “When reviewing the grant of a motion for summary judgment, we look at the trial court’s decision de novo.” Smith v. Magnolia Lady, Inc., 925 So.2d 898, 901(¶ 7) (Miss.Ct.App.2006) (citation omitted). In reviewing all the “evidentiary matters, including admissions in pleadings, answers to interrogatories, depositions, and affidavitsU” we must examine the evidence presented “in the light most favorable to the party against whom the motion for summary judgment has been made[.]” Id. “When viewed as such, if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law, summary judgment is appropriate.” Phillips v. Enter. Transp. Serv. Co., 988 So.2d 418, 420(¶ 10) (Miss.Ct.App.2008).
ANALYSIS

Whether the trial court erred in granting TCA’s motion for summary judgment.

¶ 10. Entergy’s cross-claim asked for reimbursement of its costs of defending Cremeen’s claim. Entergy argues that such payment is required under TCA’s contractual obligations to: (1) “protect” and “completely indemnify” Entergy (Section 10 of the Agreement) and (2) provide comprehensive liability insurance coverage that would have provided a defense if TCA had obtained a policy and advised Entergy of the name of the insurance carrier (Section 11 of the Agreement).
¶ 11. Section 10 of the Agreement required that TCA “shall indemnify, protect and save harmless [Entergy] from and against any and all claims and demands for damages ... which may arise out of or be caused by the erection, maintenance, presence, use or removal of said attachments. ...” Cremeen’s claims against En-tergy were certainly “claims and demands” which arose “out of’ or were “caused by” TCA’s placement of television transmission cables under the Agreement. The dissent agrees that Cremeen’s claim, if a judgment had been entered in his favor, would be subject to the indemnification provision of Section 10, and TCA would have been responsible to Entergy under this provision of the Agreement.
¶ 12. The reimbursement of Entergy’s attorneys’ fees, however, is a separate issue. Entergy’s claim for reimbursement of attorneys’ fees comes not from Section 10 but from Section 11 of the Agreement. We find that Section 10 may be interpreted independent of Section 11. Indeed, the purpose for Section 11 is to provide “insurance” that would cover TCA’s indemnification responsibility under Section 10 and a *288 defense to any such claims provided by the insurance carrier.
¶ 13. On November 24, 2003, Entergy made a demand for defense and indemnity against TCA based on their Agreement. Entergy also requested a copy of the insurance policy that required TCA to list Entergy as an “additional insured.” TCA has not accepted the indemnification and defense of Entergy and has not provided a copy of the required insurance policy. By letter dated January 13, 2004, TCA’s counsel notified Entergy that the request for indemnification and defense was being considered, but a decision had not yet been made. TCA did not provide any further response to Entergy’s indemnification demand and never provided a copy of an insurance policy that named Entergy as an additional insured.[2]
¶ 14. Here, TCA offered no evidence to establish that it fulfilled its contractual obligation to provide an insurance policy that named Entergy as an additional insured. Hence, Entergy claims that TCA is liable for its attorneys’ fees because TCA wrongfully refused to defend or provide a defense to Entergy.
¶ 15. In Travelers Insurance Co. v. General Refrigeration & Appliance Co., 218 So.2d 724, 727 (Miss.1969), the supreme court held that “the appellant wrongfully refused to defend appellee and thereby the appellant as insurer became liable for attorneys’ fees incurred and paid in the successful defense of the chancery suit.” Likewise, the following language from the opinion sums up TCA’s liability to Entergy:
Heretofore this Court has addressed the contractual duty of a liability insurance carrier to defend suits brought against the insured. It is a serious duty, requiring a good faith effort to protect the insured’s interest in court. There is no higher ethical duty in the legal profession than complete, absolute fidelity to the interest of the client. An attorney obviously should not attempt to represent a party when he is obligated to represent an adverse interest, and a conflict of interest appears.
Because Commercial Union had a clear duty to defend, which duty State Farm as the secondary carrier fulfilled upon Commercial Union’s failure to do so, it follows State Farm is entitled to all rea *289 sonable and necessary expenses in fulfilling Commercial Union’s obligations.
State Farm Mut. Auto. Ins. Co. v. Commercial Union Ins. Co., 394 So.2d 890, 894 (Miss.1981) (internal citations omitted).
¶ 16. The dissent attempts to distinguish Travelers Ins. Co. on the grounds that “it directly involved the insurance company, and the terms of the policy were provided in the record.” This argument fails when the damages that naturally flow from the breach of Section 11 are considered. If Entergy had been aware of TCA’s failure to procure insurance and Entergy had purchased such a policy, the damages would be the cost of the insurance premiums paid. Here, however, the damages that naturally flow from TCA’s breach are the amount of money Entergy expended defending the litigation. Indeed, Entergy would not have incurred that amount had TCA honored Section 11 of the Agreement and procured insurance that would have defended Entergy from Cremeen’s claims.
¶ 17. The trial court’s summary judgment in favor of TCA failed to consider TCA’s obligations to indemnify and defend Entergy against Cremeen’s claims under Sections 10 and 11 of the Agreement. Accordingly, we reverse the summary judgment granted in favor of TCA. Further, we find summary judgment in favor of Enter-gy was appropriate and render judgment in favor of Entergy in the amount of $28,852.82, together with pre- and post-judgment interest thereon.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
LEE AND MYERS, P.JJ., ISHEE, CARLTON AND MAXWELL, JJ., CONCUR. BARNES, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J., IRVING AND ROBERTS, JJ.

. The evidence established that there was no power-transmission line connected to Enter-gy’s utility pole — only telephone and television cable lines.

. Often in litigation, counsel may be reluctant to produce a copy of an insurance policy. As a result, counsel may not promptly provide an insurance policy to the other side. The reluctance and delay in the production may be understandable, but it is not permitted. Indeed, Mississippi Rule of Civil Procedure 26(b)(2) specifically provides for the ''discovery of the existence and contents of any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.”
Similarly, if a contract requires one party to purchase an insurance policy that benefits the other party, then a copy should be provided within a reasonable time and additional copies should be provided as requested. Section 11 expressly required TCA to "furnish evidence of insurance" to Entergy. Further, Mississippi law provides that "[a]ll contracts contain an implied covenant of good faith and fair dealing in performance and enforcement.” Cenac v. Murry, 609 So.2d 1257, 1272 (Miss.1992) (citing Morris v. Macione, 546 So.2d 969, 971 (Miss.1989)). "The breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness or reasonableness.” Id. Certainly, the "standards of decency, fairness or reasonableness” required the production of an insurance policy when it was initially requested by Entergy. The failure to provide or the unreasonable delay in providing an insurance policy should be considered a sanctiona-ble event, and courts should not allow parties or counsel to avoid this requirement through delay or complete omission.