STATE of Missouri ex rel. BP PROD-
UCTS NORTH AMERICA INC.,
Relator,

v.

The Honorable John A. ROSS,
Respondent.

No. SC 86229.

Supreme Court of Missouri,
En Banc.

May 31, 2005.

Dawn M. Johnson, Tina R. Carter, St. Louis, MO, for Relator.

Joseph R. Dulle, Jonathan T. Baum, Michael J. Pitzer, Don V. Kelly, Lee G. Kline, St. Louis, MO, S. Lee Patton, Kirkwood, MO, John A. Haase, Green Bay, WI, for Respondent

WILLIAM RAY PRICE, JR., Judge.

## I.

Advanced Cleaning Technologies, Inc.,[1] and Brian Wandersee, president of ACT, brought suit against PDQ Manufacturing, Inc., BP Products North America, Inc.,[2] and Paul and Janet Faix, former employees of ACT. BP filed a motion for summary judgment, which was granted in part and denied in part. BP claimed that summary judgment was improperly denied as to the plaintiffs' claims of injurious falsehood because those claims were filed out-

---

1. This corporation was formerly known as OSCO Enterprises, Inc.

2. This corporation was formerly known as Amoco Oil Company.

side the two-year statute of limitations in section 516.140, RSMo 2000.[3] This Court issued a preliminary writ.

The five-year statute of limitations from section 516.120 applies to plaintiffs' injurious falsehood claims. The two-year statute of limitations from section 516.140 applies to plaintiffs' defamation claims. Injurious falsehood protects pecuniary loss whereas defamation protects reputational injury. Accordingly, plaintiff's claims for pecuniary damages are timely, but their claims for reputational injury are barred.[4] The preliminary writ is made absolute in part and quashed in part.

## II.

The uncontroverted facts of the underlying suit are as follows. ACT distributed car wash machines, supplies, and parts, and it serviced the machines. PDQ manufactured car wash machines. Sometime in 1997, PDQ and ACT contracted for ACT to distribute and service machines manufactured by PDQ.

In December 1997, BP ordered three car wash machines from PDQ. PDQ shipped the three machines to ACT. BP paid PDQ for all three machines and paid ACT a commission for all three sales. Two of these three machines were installed at BP gas stations in March and April 1998. The third machine remained at ACT's warehouse. The machine had been ordered for a planned BP station that was never built. In the meantime, the contract between PDQ and ACT expired on June 30, 1998.

In July 1999, the head of BP's corporate security contacted the Overland Police Department regarding the third car wash machine purchased by BP and shipped to ACT in December 1997. Two former ACT employees gave written statements to the police regarding the car wash machine. One of the former employees claimed that Wandersee and an ACT employee had instructed her to sell BP's machine.

A detective applied for a warrant to search ACT's warehouse. In his affidavit in support of the application for the search warrant, the detective wrote that one of the former employees claimed that Wandersee told her "that it was a free machine commandeered from [BP]." The search warrant was signed and executed on July 26, 1999. Parts of BP's car wash machine were seized and released to the head of BP's corporate security.

The next day, Wandersee went to the police station with an ACT employee and an attorney. Wandersee and the employee were arrested for stealing more than $750 and booked, fingerprinted, and photographed. They were released that day pending application of warrants.

The police conducted further investigation at the request of the prosecutor, and the case was argued before the grand jury in May 2000. The grand jury indicted Wandersee for stealing more than $750, and he was arrested again. He was released later that night on bond. Depositions were taken in the case, but the prosecutor filed a *nolle prosequi* on November 6, 2000, to allow for further investigation. The prosecutor declined to prosecute the case because he said "[t]here were problems with credibility of the witnesses, especially the lay witnesses."

Wandersee claimed he lost business contracts and people told him it was because

---

**3.** All further statutory references are to RSMo 2000.

**4.** This opinion does not address whether the plaintiffs stated claims for malicious prosecution or what types of damages are recoverable for malicious prosecution.

of the police investigation. Also as a result of the police investigation in 1999, ACT's line of credit was frozen in September, and it was forced to provide more collateral to secure a loan. In addition, Wandersee alleged that the investigation prompted audits by various government agencies, which required him to pay additional accounting and attorney fees.

## III.

Wandersee and ACT filed a petition on January 15, 2002, against BP, PDQ, and Paul and Janet Faix. The plaintiffs voluntarily dismissed their action on February 18, 2003, and the trial court allotted them 60 days to refile. They refiled the current action on April 17, 2003.

In their petition, Wandersee and ACT assert a total of 13 claims. They both assert separate claims against PDQ, BP, and Paul and Janet Faix for injurious falsehood. They also seek punitive damages against PDQ and BP for injurious falsehood. In addition, Wandersee asserts claims against PDQ and BP for false arrest or false imprisonment and against Paul and Janet Faix for *prima facie* tort.

PDQ, BP, and the Faixes all filed motions for summary judgment. The trial court denied the motions for summary judgment as to Wandersee's and ACT's claims for injurious falsehood against PDQ, BP, and the Faixes, and as to Wandersee's *prima facie* tort claim against the Faixes. The trial court also denied the summary judgment motions as to Wandersee's request for punitive damages from his injurious falsehood claims against PDQ and BP. The trial court granted the motions for summary judgment as to Wandersee's claims for false arrest or false imprisonment against PDQ and BP and for punitive damages from those claims.

BP subsequently applied for a writ of prohibition or, in the alternative, a writ of mandamus. BP argues that the plaintiffs' injurious falsehood claims are essentially defamation claims subject to the two-year statute of limitations in section 516.140 and that the claims were not timely filed. The plaintiffs contend that the injurious falsehood claims qualify for the five-year limitation of section 516.120. This Court issued a preliminary writ of prohibition.

## IV.

Section 516.140 enumerates claims that must be brought "[w]ithin two years: [a]n action for libel, slander, assault, battery, false imprisonment, criminal conversation, malicious prosecution or actions brought under section 290.140, RSMo." Section 516.120 provides that a five-year statute of limitations applies to the following claims:

(1) All actions upon contracts, obligations or liabilities, express or implied, except those mentioned in section 516.110, and except upon judgments or decrees of a court of record, and except where a different time is herein limited;

(2) An action upon a liability created by a statute other than a penalty or forfeiture;

(3) An action for trespass on real estate;

(4) An action for taking, detaining or injuring any goods or chattels, including actions for the recovery of specific personal property, or for any other injury to the person or rights of another, not arising on contract and not herein otherwise enumerated;

(5) An action for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud.

BP argues that the plaintiffs' injurious falsehood claims are really defamation

claims and, as a result, are barred by section 516.140. The plaintiffs argue that because the tort of injurious falsehood is not expressly included in section 516.140, it instead falls under the five-year catchall provision of section 516.120(4).

## V.

BP cites to *Sullivan v. Pulitzer Broadcasting Company*, 709 S.W.2d 475 (Mo. banc 1986). In that case, the plaintiff attempted to bring a claim for false light invasion of privacy more than four years after his claim accrued. *Id.* at 475. Although no false light invasion of privacy claim was recognized in Missouri at that time, the plaintiff urged the Court to allow him to evade the two-year statute of limitations for defamation by denominating his claim as one for "false light invasion of privacy." *Id.* at 476. In its analysis, the Court stated:

> In an effort to avoid such a problem and because courts normally apply the most analogous statute of limitations, a number of courts that have either recognized the tort or assumed the existence of the action for argument's sake apply the statute of limitations for defamation actions to a claim for "false light."

*Id.* at 480. BP argues that the plaintiffs' claims for injurious falsehood are most analogous to defamation claims and, based on the previously quoted language from *Sullivan*, the two-year statute of limitations should apply.

*Sullivan*, however, is distinguishable from the instant case. The issue in *Sullivan* was whether the plaintiff's claim was recognized in Missouri and, if so, what statute of limitations should govern it. The Court declined to recognize the cause of action and noted instead that the plaintiff actually was asserting "nothing more than the classic defamation action where one party alleges that the other published

a false accusation concerning a statement of fact ... and, rather than alleging an injury to reputation, [the plaintiff] allege[d] an injury to his reputation and an injury to his right to be let alone." *Id.* at 481.

BP further cites *K.G. v. R.T.R.*, 918 S.W.2d 795 (Mo. banc 1996), for the proposition that courts should determine the applicable statute of limitations by determining what the pleaded claims "are at their core" and that a failure to do so would permit the plaintiffs to "evade a clearly expressed legislative policy." *Id.* at 800. The plaintiff in *K.G.* was 28 years old when she brought a personal injury action against her father to recover damages from him for alleged offensive sexual touching of her as a child. *Id.* at 797–98. She requested damages for "severe emotional and psychological injury, distress, anguish, fear and insecurity"; low self-esteem and self-confidence; "feelings of self-hate, worthlessness, self-disgust," and self-destructive tendencies; "emotionally distressful memories" of a "[c]hildhood without sense of safety and security"; and "expenses incurred for reasonable and necessary medical and psychological hospitalization, treatment, counseling and therapy." *Id.* at 797–98.

The Court held that although damages for emotional distress from a battery may be permitted as an element of damages in a battery action, "there is no independent action for intentional infliction of emotional distress where the existence of the claim is dependent upon a battery." *Id.* at 800. The Court declined to apply the five-year statute of limitations for intentional affliction of emotional distress in section 516.120 to the plaintiff's claim. *Id.* It stated that section 516.140 contained the applicable statute of limitations because "no cause of action for the intentional infliction of emotional harm would exist but for the

allegations of the commission of a battery." *Id.*

In contrast to the situation in *Sullivan,* BP does not dispute that Missouri recognizes injurious falsehood claims. *See, e.g., Annbar Assocs. v. Am. Express Co.,* 565 S.W.2d 701 (Mo.App.1978) (plaintiff pleaded and proved injurious falsehood claim but court reversed for instructional error). Furthermore, the plaintiffs' injurious falsehood claims, unlike the claims in *K.G.,* exist independently of any underlying claim for defamation.

## VI.

■ "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning." *State ex rel. Nixon v. QuikTrip Corp.,* 133 S.W.3d 33, 37 (Mo. banc 2004). If possible, each word or phrase in a statute must be given meaning. *State v. Blocker,* 133 S.W.3d 502, 504 (Mo. banc 2004). "Related statutes are also relevant to further clarify the meaning of a statute." *Id.*

Section 516.140 clearly bars claims for "libel, slander,[5] assault, battery, false imprisonment, criminal conversation, malicious prosecution or actions brought under section 290.140" that are not brought within two years. In contrast, the catchall provision in section 516.120(4) establishes a five-year statute of limitations to applicable causes of action.

■ Section 516.140 expressly lists the claims to which it applies, and that list does not include the tort of injurious falsehood, which has been recognized in Mis-

souri for more than 25 years. In contrast, the catchall provision of section 516.120(4) prescribes a five-year statute of limitations for "any other injury to the person or rights of another, not arising on contract and not herein otherwise enumerated." The plain language of these two statutes dictates that the five-year statute of limitations applies to injurious falsehood claims.

## VII.

■ The next issue is what claim or claims the plaintiffs pleaded under the title "Injurious Falsehood." "The rule is well established in Missouri that the character of a cause of action is determined from the facts stated in the petition and not by the prayer or name given the action by the pleader." *State ex rel. Conaway v. Consol. Sch. Dist. No. 4 of Iron County,* 417 S.W.2d 657, 659 (Mo. banc 1967). "The prayer for relief, furthermore, is not a part of the petition. The character of a cause of action is determined from the facts stated along with the relief sought." *Prindable v. Walsh,* 69 S.W.3d 912, 914–15 (Mo. App.2002).

In his claims for injurious falsehood, Wandersee alleges the following:

### COUNT I

#### (Injurious Falsehood)

. . . .

24. Plaintiff realleges, adopts, and incorporates herein by reference paragraphs 1 through 23 of this [ ] First Amended Petition as and for paragraph 24 of Count I as though fully set forth herein.[6]

---

5. "[L]ibel and slander have evolved to the point where modern law combines them as the generic tort of defamation. . . ." *Nazeri v. Mo. Valley Coll.,* 860 S.W.2d 303, 308 (Mo. banc 1993).

6. Paragraphs 1 through 23 of the petition contain essentially the same facts as those in section II of this opinion.

25. On or before July 26, 1999 PDQ communicated with agents and employees of [BP][7] and informed same that Plaintiffs had unauthorized possession of a PDQ Laserwash 4000 car wash machine which belonged to [BP].

26. That at the time PDQ made the statement referenced in paragraph 25 above, it knew or should have known that said statement was false.

27. That at the time PDQ made the statement referenced in paragraph 25 above, it intended that said statement result in harm to the interests of Plaintiffs and/or should have recognized that said statement was likely to cause harm to the interests of Plaintiffs.

28. That had PDQ contacted Plaintiffs regarding said car wash machine it would have been informed that Plaintiffs had possession of said machine pursuant to expressed instructions from PDQ.

29. That as a direct and proximate result of the aforesaid conduct of PDQ, Plaintiff has been forced to defend himself in [the Circuit Court of St. Louis County] Cause No. 00CR–2276[B], thereby incurring legal fees, costs and expenses; Plaintiff has suffered humiliation, embarrassment, disgrace, fright, injury to feeling, injury to reputation, emotional trauma and mental anguish and he has lost the benefits of his ownership of ACT and will continue to lose said benefits in the future.

WHEREFORE, based upon the foregoing, Plaintiff Brian Wandersee prays for judgment in his favor and against Defendant PDQ on Count I of this First Amended Petition in an amount which is fair and reasonable in excess of $25,000.00, for their costs incurred herein, for prejudgment and post-judgment interest at the highest rate allowed by law, and for such other and further relief as this Court deems just and proper.[8]

▪ In a claim for injurious falsehood:

[o]ne who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if (a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity.

*Annbar Assocs. v. Am. Express Co.*, 565 S.W.2d 701, 706 (Mo.App.1978) (quoting Restatement (Second) of Torts sec. 623A (1977)). In addition, the plaintiff must establish "[p]roof of pecuniary loss" as "an element of a claim for damages for injurious falsehood." *Id.* at 708; *see* Restatement (Second) of Torts sec. 623A cmt. g (1977) ("in injurious falsehood, pecuniary

---

7. In the injurious falsehood claims against BP, this paragraph alleges that: "On or before July 26, 1999[BP] communicated with agents and employees of the Overland Police Department and informed same that Plaintiffs had unauthorized possession of a PDQ Laserwash 4000 car wash machine which belonged to [BP]."

8. The injurious falsehood claims filed by Wandersee against PDQ, BP, and the Faixes are alike except the applicable defendant is sub-stituted when appropriate. The injurious falsehood claims filed by ACT against PDQ and BP include two numbered paragraphs and one unnumbered paragraph. The first incorporates the previous paragraphs containing Wandersee's injurious falsehood claim against that defendant and the second is identical to paragraph 29. The ensuing paragraph is identical to the request for relief in the unnumbered paragraph after paragraph 29.

loss to the plaintiff must always be proved").

In comparison, a plaintiff must establish the following in a defamation claim: "1) publication, 2) of a defamatory statement, 3) that identifies the plaintiff, 4) that is false, 5) that is published with the requisite degree of fault, and 6) damages the plaintiff's reputation." *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 70 (Mo. banc 2000). A plaintiff must prove actual damages in all defamation cases. *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 313 (Mo. banc 1993).

The torts of defamation and injurious falsehood protect different interests. Restatement (Second) of Torts sec. 623A cmt. g (1977). "The action for defamation is to protect the personal reputation of the injured party.... The action for injurious falsehood is to protect economic interests of the injured party against pecuniary loss." *Id.*

"Pecuniary" means "relating to or consisting of money." Bryan A. Garner, *Garner's Modern American Usage* 595 (2003). "Pecuniary loss" accordingly is a "loss of money or of something having monetary value." Black's Law Dictionary 957 (7th ed.1999). In a tort, recovery for damages from "pecuniary loss" or "pecuniary harm" refers to "economic damages." *See, e.g.*, MAI 21.05 (2002).

## VIII.

Although titled "Injurious Falsehood," the plaintiffs' claims request damages for "humiliation, embarrassment, disgrace, fright, injury to feeling, injury to reputation, emotional trauma and mental anguish." These damages are not pecuniary and are not recoverable under a claim for injurious falsehood. To the extent that these damages are recoverable under a claim for defamation, they are barred by the statute of limitations. The plaintiffs' claims for pecuniary damages arising from injurious falsehood, such as "legal fees, costs and expenses" and Wandersee's loss of "the benefits of his ownership of ACT and ... continue[d loss of] said benefits in the future," are timely.

## IX.

The preliminary writ is made absolute in part and quashed in part.

All Concur.