

# In the Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| LAVANDEN DARKS, | ) | |
| Appellant-Respondent, | ) | |
| | ) | **WD82797 Consolidated with** |
| v. | ) | **WD82849** |
| | ) | |
| JACKSON COUNTY, MISSOURI, et al., | ) | FILED: |
| RESPONDENT-APPELLANT. | ) | |

## APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
### THE HONORABLE ROGER M. PROKES, JUDGE

### BEFORE DIVISION ONE: LISA WHITE HARDWICK, PRESIDING JUDGE, CYNTHIA L. MARTIN AND THOMAS N. CHAPMAN, JUDGES

Lavanden Darks appeals the circuit court's grant of a motion for judgment notwithstanding the verdict ("JNOV"), which set aside the jury's award of punitive damages on his sexual harassment and retaliation claims against Jackson County. Jackson County cross appeals the denial of its motion for a JNOV on three grounds, asserting: (1) that Darks failed to plead sexual harassment; (2) that Darks failed to present substantial evidence supporting two elements of sexual harassment; and (3) that Darks failed to present substantial evidence supporting the elements of retaliation. For reasons explained herein, we affirm the circuit court's judgment in part, reverse in part, and remand with instructions to enter judgment in accordance with the jury's verdict.

## FACTUAL AND PROCEDURAL HISTORY

Since February 2012, Darks has worked as a deputy with the Jackson County Sheriff's Department and is one of four black deputies employed as sworn officers. Jackson County employs approximately 100 total sworn officers. At the time in question during 2014, Jackson County required all sworn officers appearing in uniform to be clean shaven with the exception of moustaches. Darks experienced pain with shaving and was medically diagnosed with an inflammatory skin condition known as psuedofolliculitis barbae ("PFB").

After attempting several treatments and other shaving methods, Darks sought an accommodation allowing him to appear in uniform with a manicured beard. He complained after the leadership of the Sheriff's Department displayed open hostility to the idea and informed him that he could take sick leave to address the issue. Sheriff Mike Sharp, after discussing the issue with the county counselor, eventually relented and agreed to the accommodation. Darks, however, stated that even after granting the accommodation, leadership within the department expressed open displeasure with his facial hair and insinuated that he should seek employment at another law enforcement agency if shaving was too difficult.

In August 2015, Sergeant Ronda Montgomery became Darks's direct supervisor after both she and Darks were transferred into Road Patrol, Midnight Squad 1. In October 2015, Montgomery encountered Darks in the concealed carry permitting office ("the CCP"). At the request of Captain David Epperson, Darks had been intermittently stopping by the office to check on the civilian staff. Epperson had requested these trips because he believed a uniformed law enforcement presence would help protect the

2

civilian staff in the CCP.  As will be discussed in greater detail *infra*, Montgomery asked Darks and two civilian employees "if he always comes in to bother us and flirt[] with [the female employees]."  Darks was embarrassed and left the office but the civilian staff said Darks was never inappropriate and indicated that they were friends.  Montgomery, however, continued, stating that she "knows how men in law enforcement can be[,]" and that "[y]ou know he's married with a kid."  One civilian employee later complained about Montgomery's comments in a memorandum to Sergeant Dale Covey.

Shortly after being informed by Sergeant John Payne on November 19, 2015, that Darks had reported the incident and that Payne had been assigned to complete an internal affairs investigation, Montgomery recommended that Darks receive a written reprimand for an incident in which he missed the start time of assigned training.  The memorandum recommending the reprimand stated that Darks had never been on time to any training, a claim not contained in any other document, and that he had engaged in dishonesty for lying about the reason he was late to the specific training at issue.

Also, within hours of learning about the internal affairs investigation, the department leadership initiated plans to reassign Darks to the unit providing security for the county's courthouses. Montgomery informed Darks of the transfer four days later. Darks stated, and Payne later confirmed, that a courthouse assignment was viewed as a punishment detail reserved for misbehaving employees.

In January 2016, Colonel Hugh Mills asked Montgomery to complete an "efficiency report" regarding Darks.  Montgomery acknowledged that the request "just came out of the blue" because she had never heard of an efficiency report and she no longer was Darks's supervisor.  Two other supervisors, Captain Scott Goodman and

3

Undersheriff Colonel Benjamin Kenney reported that they were not familiar with an efficiency report being used in the Jackson County Sheriff's Department. In response to Mill's request, Montgomery submitted an efficiency report that contained several negative statements regarding Darks's job knowledge and performance that were not supported by other records.

Later in January, Mills asked Montgomery to conduct a performance review for Darks. Despite the general policy that these reviews occur annually, Montgomery was directed to review only three months – the period between August 8, 2015, and November 11, 2015. Montgomery's performance review of Darks contained new allegations of unsatisfactory performance, including references insinuating that Darks was a "Brady cop," which is a reference indicating that prosecutors would have to disclose that Darks is dishonest when prosecuting any cases originating from him.

Darks filed a petition for damages against Jackson County, Sharp, Mills, and Montgomery alleging claims of discrimination based on race, sex, and disability, retaliation pursuant to the Missouri Human Rights Act ("MHRA") and retaliation pursuant to Missouri Workers' Compensation Statute. Prior to trial, Darks voluntarily dismissed Sharp, Mills, and Montgomery as well as his claim for retaliation pursuant to Missouri's Workers' Compensation Statute. After the presentation of evidence and argument, the jury found in favor of Darks on his claims of sexual harassment and retaliation. The jury awarded Darks $75,000 in actual damages and determined that Jackson County was liable for punitive damages. After the bifurcated proceeding on punitive damages, the jury assessed $300,000 in punitive damages against Jackson County. The circuit court

4

subsequently awarded Darks $371,610 in attorney fees and ordered Jackson County to remove from its files the negative performance review authored by Montgomery.

Jackson County filed a motion for a JNOV. The circuit court partially granted the motion and set aside the jury's verdict awarding $300,000 in punitive damages. The court, however, denied the remaining requests for a JNOV made by Jackson County. Darks appeals the circuit court's partial grant of Jackson County's motion for judgment notwithstanding the verdict. Jackson County cross appeals the circuit court's partial denial of its motion for a JNOV.

## ANALYSIS

### I.   JACKSON COUNTY'S POINTS ON APPEAL

Jackson County's three points on appeal challenge the circuit court's denial of its motion for a JNOV on Darks's sexual harassment and retaliation claims.[1]

#### A.   STANDARD OF REVIEW

"The standard of review of the denial of a JNOV is essentially the same as the overruling of a motion for directed verdict." *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 14 (Mo. banc 2012). "A case may not be submitted unless each and every fact essential to liability is predicated upon legal and substantial evidence." *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 756 (Mo. banc 2011) (quoting *Inv'rs Title Co. v. Hammonds*, 217 S.W.3d 288, 299 (Mo. banc 2007)). Whether a plaintiff has made a submissible case is a question of law subject to *de novo* review, *id.*, but "the evidence is viewed in the light most favorable to the result reached by the jury, giving the plaintiff the benefit of all reasonable inferences and disregarding evidence and inferences that

---

[1] For the sake of clarity, we will address Jackson's County's appeal first, and we will address its points in a different order than they were presented to this court.

5

conflict with that verdict."  *Clevenger v. Oliver Ins. Agency, Inc.*, 237 S.W.3d 588, 590

(Mo. banc 2007).  Indeed, "[t]he jury's verdict will be reversed only if there is a complete

absence of probative facts to support the jury's conclusion."  *Keveney v. Mo. Military

Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010).

### B.    PLEADING SEXUAL HARASSMENT

In Point II, Jackson County asserts that the circuit court erred in denying its

motion for a JNOV because Darks failed to adequately plead the theory of sexual

harassment.  It is a well-settled principle "that a party cannot recover for a cause of

action not pleaded."  *Miken Techs., Inc. v. Traffic Law Headquarters, P.C.*, 494 S.W.3d

609, 612 (Mo. App. 2016) (citation and quotations omitted).  Similarly, "[t]he rule is well

established in Missouri that the character of a cause of action is determined from the

facts stated in the petition and not by the prayer or name given the action by the

pleader."  *State ex rel. BP Prods. N. Am. Inc. v. Ross*, 163 S.W.3d 922, 927 (Mo. banc

2005) (citation and quotations omitted).  However, in determining the nature of the

cause of action, the court must also consider the relief sought by the party in

conjunction with the stated facts.  *Id.*

Despite citing cases that recognize that the sufficiency of a pleading elevates

substance over form, Jackson County's second point focuses almost exclusively on the

form of Darks's petition.  In support of its claim of error, Jackson County directs our

attention to a "Table of Claims" contained on page 2 of Darks's petition, which serves as

a quasi-table of contents with page references for the petition.  Jackson County asserts

that, within that table, Darks lists all of his claims and that the term "sexual harassment"

is "noticeably absent."  In response, Darks notes that the title of the sex discrimination

6

count, as displayed in the body of the petition, states that Count II is alleging "Harassment and Discrimination based on Sex." Such form-based or title-based arguments are inconsequential to the point on appeal, because the nature of the pled cause of action is determined by the stated facts and requested relief, not by any invocation of the specific word "harassment." *See id.*

In regard to the sufficiency of the pleading, Jackson County argues that there was no evidence presented to support the facts pled. This focus on the evidence presented at trial mirrors Jackson County's Point I, discussed *infra*, regarding the ultimate submission of sexual harassment to the jury and does nothing to contest the validity of Darks's pleading. Instead, Jackson County makes the conclusory allegation that "there are no facts contained in the Petition alleging that Montgomery sexually harassed Plaintiff." "When an appellant fails to support contentions with relevant law and analysis beyond conclusory statements, we deem the point abandoned." *Wallace v. Frazier*, 546 S.W.3d 624, 628 (Mo. App. 2018). To the extent that Jackson County's argument that the word "harassment" occurs only in paragraphs 45 and 50 of Darks's petition presents an identifiable issue for appeal, we review the point of error *ex gratia* and determine such claim is without merit.

A plaintiff makes a *prima facie* case of hostile work environment sexual harassment involving a supervisory employee[2] by pleading facts demonstrating that:

---

[2] Jackson County asserts that to prevail under a sexual harassment cause of action, a plaintiff must demonstrate that:

> (1) he was a member of a protected class; (2) he was subjected to unwelcome sexual harassment; (3) the harassment was based on his sex; (4) this harassment affected a term, condition, or privilege of employment in a manner sufficiently severe to create an abusive work environment and (5) the employer knew or should have known of the harassment and failed to take proper remedial action.

7

(1) she (or he if the claim is brought by a male) is a member of a protected group; (2) she was subjected to unwelcome sexual harassment; (3) her gender was a contributing factor in the harassment; and (4) a term, condition or privilege of her employment was affected by the harassment.

*Hill v. Ford Motor Co.*, 277 S.W.3d 659, 666 (Mo. banc 2009) (footnote omitted).  "A plaintiff can meet the requirement of proving that the harassment affected a term or condition of [his] employment by showing that the harassment contributed to cause a 'tangible employment action.'"  *Id.*  "Examples of tangible employment actions include but are not limited to: hiring and firing; promotion and failure to promote; demotion; undesirable reassignment; a decision causing a significant change in benefits; compensation decisions; and work assignments."  *Id.* (quoting 8 CSR 60-3.040(17)(D)(4)).

In his petition, Darks alleged facts from which the court and Jackson County could ascertain that he was raising a claim of sexual harassment.  These alleged facts include that (1) he is male; (2) that Montgomery harassed him by filing a false report after observing his interactions with female employees and making the comment that the female employees "know how men are in law enforcement"; (3) that he believed these actions were taken because he was a male; and (4) that due to Montgomery's false report and his attempts to challenge the false report he was reassigned to a less desirable position at the courthouse.  Further, Darks specifically asserted that, due to Montgomery's actions, he has suffered, *inter alia*, "a detrimental job record."  Those

_____

(citing *Diaz v. Autozoners, LLC*, 484 S.W.3d 64, 83 (Mo. App 2015)).  This is incorrect.  An employer's knowledge of the harassment and subsequent failure to rectify does not apply where the alleged harasser is the plaintiff's supervisor.  *See id.* at 76; *see also Hill*, 277 S.W.3d at 666 n.6 (recognizing the fifth element addressing an employer's knowledge of the harassment applies where the alleged harassers are "co-workers").

8

pled facts, taken as true, track the elements of sexual harassment regardless of what the specific count was entitled. Therefore, Jackson County's Point II is denied

### B.     SUBMISSION OF SEXUAL HARASSMENT

In Point I, Jackson County asserts that the circuit court erred in denying its motion for a JNOV because Darks failed to elicit substantial evidence necessary to support the elements of his sexual harassment claim. Particularly, Jackson County asserts that Darks failed to present evidence that demonstrated that any comments from Montgomery were "sexual in nature [or] based on Plaintiff's sex or gender" or that they affected a term, condition or privilege of Darks's employment.

### I.     JACKSON COUNTY'S ASSIGNMENT OF ERROR APPLIES WRONG STANDARD

Jackson County first asserts that Darks did not provide substantial evidence to support the jury's determination that Montgomery's comments were sexual in nature or based on Darks's sex or gender. This allegation of error applies the elements of sexual harassment as set forth in *Diaz v. Autozoners, LLC*, 484 S.W.3d 64, 83 (Mo. App 2015). As Darks has argued and as we have addressed *supra*, this is not the correct standard because the *Diaz* formulation of sexual harassment does not apply where the alleged harassers are supervisory employees. *See id.* at 76; *see also Hill*, 277 S.W.3d at 666 n.6. We will, however, address Jackson County's allegation that the court erroneously denied its motion for a JNOV because Darks failed to demonstrate that his gender was a contributing factor in his harassment by Montgomery, to the extent it was presented in Jackson County's brief.[3]

---

[3] In its reply brief, Jackson County does not concede that the *Diaz* elements are inapplicable here; instead, it argues that Darks failed to provide substantial evidence to support the *Hill* element of unwelcome sexual harassment. This argument arrives too late. "A reply brief is to be used only to reply

9

Erin Adair, a civilian employee working in the CCP when the harassment allegedly occurred, stated that in October 2015, Darks "popped his head into the CCP office to say hello." During that period of time, Darks would intermittently stop by the CCP at the request of Epperson, the captain overseeing Staff Services and the CCP. Epperson stated that he encouraged Darks and other sheriff deputies to stop by and make their presence known in the CCP because he believed it would help protect the civilian staff from "irate members of the public" that would sometimes pass through the CCP.

On the particular day that Adair mentioned Darks's "popping his head" into the office, Montgomery had also stopped into the CCP. When Montgomery observed Darks in the office, she asked him "why he was [in the CCP]" and then asked Adair and another civilian employee, Sparkle Pounds, "if he always comes in to bother us and flirt[] with us." Adair stated that she told Montgomery that they were not bothered by Darks and that he never treated them inappropriately. Adair stated that Darks looked very uncomfortable and "left right after that part of the conversation." Montgomery, however, continued, stating that she "knows how men in law enforcement can be[,]" and that "[y]ou know he's married with a kid." Adair later complained about Montgomery's conduct in a memorandum to Covey.

Further, Darks stated that he was later made aware of Montgomery's statements and felt demeaned and degraded by the comments. He stated that, even though they

to arguments raised by respondents, not to raise new arguments on appeal." *Arch Ins. Co. v. Progressive Cas. Ins. Co.*, 294 S.W.3d 520, 524 n.5 (Mo. App. 2009) (citation and quotations omitted). '[W]e do not review an assignment of error made for the first time in the reply brief." *66, Inc. v. Crestwood Commons Redevelopment Corp.*, 130 S.W.3d. 573, 584 (Mo. App 2003). While it is true that Jackson County made the conclusory statement that "all five sexual harassment elements were not proven with substantial evidence[,]" it specifically assigned error for the two reasons mentioned *supra*. Therefore, we decline to address Jackson County's allegation of error on this ground.

had never had any previous issues, the comments made it so that he almost no longer wanted to work under Montgomery's supervision. Darks reported the incident, and an internal affairs investigation was assigned to Payne. After reviewing memorandums from Adair, Darks, Covey, and Epperson, Payne conducted an investigation that included interviewing witness and speaking with and receiving a memorandum from Montgomery. During this investigation, Payne stated that Pounds believed that Montgomery's comments "[i]nsinuated that Deputy Darks and men in law enforcement are some kind of sexual predators." After completing his investigation, Payne concluded that sufficient evidence existed to sustain the allegations that Montgomery had, *inter alia*, violated the Jackson County personnel rule prohibiting sexual harassment.

Jackson County provides no reason why the jury could not consider this evidence. These probative facts support the jury's determination that Darks's gender was a contributing factor to his harassment. Indeed, Montgomery's comments expressed to Darks and the female civilian employees in the CCP that *men* in law enforcement were not to be trusted around women because sexual misconduct would surely follow from their presence. Jackson County's alternative explanation of the evidence is immaterial, because our standard for reversal requires not that there is no other alternative meaning of the evidence but that there is a complete absence of probative facts to support the jury's finding. *See Keveney*, 304 S.W.3d at 104. A review of the record plainly demonstrates that there is a wealth of evidence supporting the jury's finding.

## II. SUFFICIENT EVIDENCE WAS PRESENTED ON "AFFECTED" ELEMENT

Next, Jackson County asserts that Darks did not provide substantial evidence from which the jury could determine that Montgomery's sexual harassment of Darks affected a term, condition, or privilege of his employment. In support of this assertion, Jackson County argues that Sharp was the "sole individual with the authority to hire, fire, promote, and/or discipline employees" and that Montgomery could only *recommend* discipline. Jackson County further contends that the record is bereft of any evidence demonstrating that Montgomery took any action against Darks.

Our review of the record indicates that Darks presented ample evidence to submit the issue to the jury. "Discriminatory harassment affects a term, condition, or privilege of employment if it is sufficiently severe or pervasive enough to alter the conditions of a plaintiff[']s employment and create an abusive working environment*."* *Alhalabi v. Mo. Dept't of Nat. Res.*, 300 S.W.3d 518, 527 (Mo. App. 2009). As described *supra*, Darks, after hearing Montgomery's comments, stated that he felt demeaned and degraded and no longer wanted to work under her supervision. Further, Adair, Pounds, and Covey all stated that they believed Montgomery's statements were inappropriate and that the statements made both Darks and the civilian employees feel different about interacting with one another. "Once there is evidence of improper conduct and subjective offense, the determination of whether the conduct rose to the level of abuse is largely in the hands of the jury." *Cooper v. Albacore Holdings, Inc.*, 204 S.W.3d 238, 245 (Mo. App. 2006) (citation and quotations omitted). Therefore, the

12

circuit court did not err in denying Jackson County's motion for a JNOV on Darks's sexual harassment claim. Jackson County's Point I is denied.

### C.    SUBMISSION OF RETALIATION

In Point III, Jackson County asserts that the circuit court erred in denying its motion for a JNOV because Darks failed to elicit substantial evidence necessary to support the elements of his retaliation claim. Particularly, Jackson County asserts that Darks failed to present evidence that demonstrated he "made a reasonable good faith complaint of discrimination."

"Under the MHRA, it is an unlawful discriminatory practice to retaliate 'in any manner' against an employee who 'has opposed any practice prohibited by this chapter' or 'has filed a complaint ... pursuant to this chapter.'" *Soto v. Costco Wholesale Corp.*, 502 S.W.3d 38, 47-48 (Mo. App. 2016) (quoting § 213.070(2), RSMo 2016). To make a submissible case of retaliation, Darks was required to demonstrate: "(1) he complained of discrimination; (2) [his employer] took adverse action against him; and (3) a causal relationship existed between the complaint and the adverse action." *Id.* at 48. Although Jackson County initially asserts that Darks failed to complain about the harassment, the nature of its argument clearly asserts that the actions taken by the supervisory employees against Darks were not retaliation but, instead, were justified by Darks's work performance. Based upon the record before this court, a jury could determine otherwise.

As discussed in detail *supra*, Darks reported his allegations of sexual harassment against Montgomery. Shortly after Montgomery was made aware of Darks's report and the subsequent internal investigation, Montgomery filed a disciplinary memorandum

13

accusing Darks of never being on time to any training and of lying about the reasons for his tardiness. Additionally, Darks was transferred to the unit providing security for the courthouse four days after Montgomery learned of the internal investigation. Evidence was presented that this unit was considered a punishment detail or one that was an employee's last stop before being forced out. Further evidence was presented that Montgomery, after learning of the sexual harassment investigation, authored a negative performance review for Darks that hurt his chances for a raise or promotion.

Jackson County shows no reason why the jury could not consider this evidence and, instead, argues that there was other, contrary evidence that supported a finding that any action taken by Montgomery or any other supervisory employee was justified based on Darks's performance. This argument ignores our standard of review. *See Keveney*, 304 S.W.3d at 104. Evidence probative of every element was presented, and the jury ultimately believed Darks's presentation of such evidence. Jackson County, therefore, has failed to demonstrate why the court should have granted its motion for a JNOV on Darks's retaliation claim. Jackson County's Point III is denied.

## II.  DARKS'S POINT ON APPEAL

In his sole point on appeal, Darks asserts that the circuit court erred in granting Jackson County's motion for a JNOV on the punitive damages award because substantial evidence was presented from which a jury could find that Darks clearly and convincingly demonstrated that Jackson County engaged in outrageous conduct.

### A.  STANDARD OF REVIEW

"The trial court's decision to grant a motion for JNOV is a question of law that we review de novo, and in doing so, we review to determine whether a submissible case

14

was made." *Mercer v. BusComm, Inc.*, 515 S.W.3d 238, 242 (Mo. App. 2017). Darks must provide "substantial evidence for every fact essential to recovery in order to make a submissible case." *Id.* "Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of fact can reasonably decide a case." *Ark.-Mo. Forest Prods., LLC v. Lerner*, 486 S.W.3d 438, 447 (Mo. App. 2016) (citation and quotation omitted).

We presume the evidence presented by the plaintiff is true, *Eidson v. Reprod. Health Servs.*, 863 S.W.2d 621, 626 (Mo. App. 1993), and view it "and all inferences drawn therefrom in the light most favorable to the verdict[.]" *Ark.-Mo. Forest Prods.*, 486 S.W.3d at 447. In reviewing the court's action, we indulge "a presumption favoring the reversal of a JNOV, and we will not overturn a jury verdict unless there is a complete absence of probative facts to support the verdict." *Id.* This presumption exists because "[a] JNOV is a drastic action that can only be granted if reasonable persons cannot differ on the disposition of the case." *Id.*

Whether the plaintiff has provided evidence sufficient to support an award of punitive damages is a question of law, which we review *de novo*. *Diaz*, 484 S.W.3d at 88. Similar to the standard for reviewing the grant of a JNOV, however, [w]e view the evidence and all reasonable inferences in the light most favorable to submissibility [of punitive damages] and disregard all evidence and inferences which are adverse thereto." *Id.*

### B.   PUNITIVE DAMAGES GENERALLY

"Punitive damages require clear and convincing proof of a culpable mental state, either from a wanton, willful, or outrageous act, or from reckless disregard for an act's

consequences such that an evil motive may be inferred." *Drury v. Mo. Youth Soccer Ass'n, Inc.*, 259 S.W.3d 558, 573 (Mo. App. 2008). "The necessary mental state is found when a person intentionally does a wrongful act without just cause or excuse." *Id.* "When someone intentionally commits a wrong and knew that it was wrong at the time, an evil motive and wanton behavior is exhibited." *Id.* A jury, however, may also infer an evil intent "where a person recklessly disregards the rights and interests of another person." *Id.* Punitive damages are a harsh and extraordinary remedy and should be awarded sparingly. *Romeo v. Jones*, 144 S.W.3d 324, 334 (Mo. App. 2004).

## C. THE COURT ERRED IN GRANTING JACKSON COUNTY'S JNOV

In support of his point of error, Darks exhaustively recounts the evidence presented at trial, and we will not address all of it. However, material to the point at issue here, Darks presented evidence from which a jury could have determined that Darks was employed as a sheriff's deputy and that his performance, while not without difficulties, satisfactorily met the standards expected of that position. The jury could also find that Darks reported his pain associated with shaving and that he sought medical treatment for the condition of PFB. After a doctor provided a treatment plan that required that Darks refrain from shaving, he sought an accommodation from the Sheriff. The accommodation was initially refused, and Darks was required to shave despite the pain that accompanied the action. It was only after he filed an official memorandum asserting that this refusal was unlawful, and a discussion between the Sheriff and the county counselor occurred, that Darks's accommodation was granted.

Darks stated that, after the accommodation was made, Sharp and Mills repeatedly and openly expressed their displeasure with his facial hair. He stated that

16

they continued to inform him that shaving was necessary and that he could work at another law enforcement agency if shaving was too difficult. The jury could reasonably infer that this open hostility, in conjunction with Darks's reporting of Montgomery for harassment, led to a targeted campaign against Darks.

Further supporting this inference, the jury heard evidence of an investigation into Darks's residency. Jackson County has a policy that all deputies must reside within the county. Evidence was presented that an individual from the Blue Springs School District, former Jackson County Sheriff Tom Phillips, informed Jackson County that Darks had enrolled his son in classes and that Phillips believed Darks no longer resided in Jackson County. It was later discovered the Darks and his wife were separated and his wife had taken up residence outside Jackson County, but Darks continued to live within the county.

The jury could reasonably infer that such investigation was a pretext, especially in light of an email, sent from Phillips to Montgomery, in which Phillips stated: "Since [Darks] withdrew [his child], we concluded our investigation. That's what we normally do. Sorry. *Probably not enough to terminate yet*. Start your file. He will give you plenty of ammo." (Emphasis added). Further, Montgomery was less than forthcoming regarding the opening of "a file" on Darks, initially stating that, at the time she received the email from Phillips, she had not yet opened any such file. This statement, however, was immediately contradicted by Darks's presenting an email, in the chain with Phillips, in which Montgomery stated: "P.S. My file is already thick for only having him not quite two months." Additionally, the jury heard that, after being informed that Darks had

17

withdrawn his child from Blue Springs, Montgomery responded, *inter alia*, with the acronym "LOL[,]" which she confirmed meant laughing out loud.

This was not the only evidence presented to support punitive damages. In addition to the sexual harassment investigation detailed *supra*, the jury heard evidence from which it could have inferred that supervisory employees within the Jackson County Sheriff's Department attempted to interfere with the investigation and punish the investigator for his conclusions. Payne stated that he completed the investigation into the reports of sexual harassment by Montgomery. As discussed in detail *supra*, that document memorialized Payne's conclusion that Montgomery had violated the county's policy against sexual harassment. Colonel Benjamin Kenney, the undersheriff in charge of investigations, stated that this document, like all internal affairs investigations, would have been reviewed by Sharp. Despite this information, evidence was presented that Jackson County did not inform Darks of its findings or produce the document during discovery.

Further, Payne stated that he was reticent to testify and that he believed the investigation had hurt his career. Approximately a year and a half after authoring the investigatory memorandum concluding that Montgomery had violated the policy against sexual harassment, Payne was reassigned to provide security to the court. He, like Darks, believed this assignment was a punishment detail. Payne remained in that assignment until a month before trial.

"The employee's evidence in support of [his] MHRA claim may also meet [his] burden for submitting punitive damages to the jury." *Holmes v. Kansas City Mo. Bd. of Police Comm'rs ex rel. Its. Members*, 364 S.W.3d 615, 629 (Mo. App. 2012). Further,

18

"[d]irect evidence is not common in discrimination cases because employers are shrewd enough to not leave a trail of direct evidence." *Id.* at 628 (citation and quotations omitted). "In the absence of direct evidence, a plaintiff may use circumstantial evidence to prove [his] case." *Id.* at 629. Indeed, '[t]he rationale for allowing the jury to make reasonable inferences in determining liability for punitive damages is the same as that for the substantive claim: employers may act to prevent the development of direct evidence and a clear evidentiary trail of discriminatory intent is rare." *Id.* From the evidence adduced at trial, a jury could plainly infer that supervisory employees in Jackson County engaged in outrageous conduct either through the intentional completion of any number of wrongful acts or through the reckless disregard of Darks's rights. Darks's point on appeal is granted. The circuit court's entry of JNOV on the punitive damages award is reversed, and the cause is remanded for entry of judgment in accordance with the jury's verdict.

## III.    MOTION FOR ATTORNEYS' FEES

Prior to submission of his case, Darks made a motion requesting attorneys' fees on appeal pursuant to Missouri Court of Appeals, Western District Special Rule 29.[4] In awarding attorneys' fees, we follow the "American Rule," which provides that "orders requiring one party to pay another party's attorney's fees or other expenses ordinarily are not permitted unless the parties' contract or a statute authorizes the court to make such an award." *Birdsong v. Children's Div., Mo. Dep't of Soc. Servs.*, 461 S.W.3d 454, 459 (Mo. App. 2015) (internal citation and quotations omitted). The MHRA contains a

---

[4] Western District Court of Appeals Special Rule 29 provides, in pertinent part: "Any party claiming an amount due for attorney's fees on appeal pursuant to contract, statute or otherwise and which this Court has jurisdiction to consider, must file a separate written motion before submission of the cause."

fee-shifting provision that authorizes this court to make an award of attorneys' fees to the prevailing party. *See* § 213.111.2, RSMo 2016. "A prevailing party is one that succeeds on any significant issue in the litigation which achieved some of the benefit the parties sought in bringing suit." *Hurst v. Kansas City, Mo. Sch. Dist.*, 47 S.W.3d 327, 344 (Mo. App. 2014) (citation and quotations omitted), *overturned on other grounds by legislative action*, L. 2017, S.B. No. 43. "Where a plaintiff has prevailed in an action under the MHRA, the court should award attorneys' fees unless special circumstances would render such an award unjust." *McCrainey v. Kansas City Mo. Sch. Dist.*, 337 S.W.3d 746, 756 (Mo. App. 2011) (citations and quotations omitted).

Here, Darks has prevailed on both his allegation of error and Jackson County's cross-appeal. Therefore, we grant his motion for attorneys' fees on appeal. "Although this court has the authority to allow and fix the amount of attorney's fees on appeal, we exercise this power with caution, believing in most cases that the trial court is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fee requested." *Id.* (citation and quotation omitted). Consequently, the case is remanded for the purpose of entering judgment in accordance with this appeal and to conduct a hearing to determine the reasonableness of the attorneys' fees requested on appeal.

## CONCLUSION

The circuit court's judgment is affirmed with regard to the issues raised in Jackson County's appeal. On the issue raised by Darks, the judgment is reversed and the cause is remanded with instructions to enter judgment in accordance with the jury's

20

verdict on the punitive damages award and to conduct a hearing to determine the reasonableness of the attorneys' fees requested on appeal.

_____
LISA WHITE HARDWICK, JUDGE

ALL CONCUR.